Next case we'll hear is United States v. Louthian. And Mr. Khoury. Yes, Your Honor. We'll hear from you. Good morning, and good morning to the Court, and may it please the Court. My name is Michael Khoury, and I am Eddie Louthian's lawyer. I tried the case, and I sort of feel guilty up here, challenging the trial that we had in front of one of the best trial judges I ever tried a case in front of in 34 years, Judge Jones in Abingdon. These cases are tough cases, and the reason they're tough cases is because the government kind of has a head start, kind of like a staggered start in a track meet. And the reason the government has a head start is because somebody from Medicare or CMS or the intermediate carrier is called as a witness to interpret administrative regulations that really aren't law but have the force of law. And as they interpret the administrative regulations, then we have people that come to testify about the underlying facts that are consistent with the interpretation. In this case, that if the patients are ambulatory, then they do not qualify for emergency ambulance transportation for dialysis. I thought this case was about your client's misrepresentation about their condition, not whether they qualified under the statute. In other words, your client made a false claim, allegedly, saying that these people couldn't walk. And most of the ones I saw couldn't get off their stretchers and that those were false statements, and they obtained reimbursement from Medicare and from Anthem on that basis. Yes, sir. And the government very artfully made that the issue in the case. Well, it's a False Claims Act. It's not a question of interpreting the reg as whether you comply with a reg. However, if he had submitted a claim for a procedure, taking off a wart, and one person says, that's just a phasing, and the other guy says, oh, no, it's surgery, now you have this interpretive problem you're talking about. But here he understood that in order to get reimbursement, he had to say that these patients couldn't walk. That was his understanding, right? If you frame the issue that way, of course, the fact of the matter is, and the jury was instructed consistent with 42 CFR 420, I believe, that there's two basis upon which that ambulance transportation can be covered. One of the basis is that a patient is essentially non-ambulatory, but another basis is that no other means of transportation would protect. He didn't make a claim on that basis. He didn't say, I took them there because there was no other transportation. He says, I took them there with the ambulance because they couldn't walk. That's true. Okay, well, and the jury convicted him on that. But the fact of the matter is that if it's medically necessary for ambulance transportation to occur, then it's going to be covered. And the government never proved the lack of medical necessity for the ambulance transportation. The doctor who examined these patients and the doctor who originally approved the medical necessity for the transportation was never called as a witness, nor was a medical expert ever called as a witness except for the person. Did he make a false statement? The jury found that, Your Honor, that he did make a false statement. Fair enough. That's what the jury found. And was that his charge, False Claims Act? His charge was conspiracy to commit health care fraud, health care fraud, and making a false claim in order to obtain a health care benefit. So, yes, it was a false claim. I mean, you know, you can argue what the interpretation of when you can use an ambulance, if you wish, but I must say what we have to look at is the papers that he submitted for claims. They weren't the fact that there wasn't available transportation or some other condition that might be allowed. He basically said the reason I used an ambulance was because these people could not walk. They were non-ambulatory. And, of course, as you know, the evidence showed to the contrary. That's true. At least it was found by the jury. But the evidence also showed that these patients were in end-stage kidney disease. Oh, no question. They had to have dialysis. There's no question about it. But the question is whether they should have been reimbursed for ambulance service. And this man, what, he charged over a million dollars for that? I think that's what was billed, Your Honor, but not collected. Billed to the rescue squad. The rescue squad, not my client, but the rescue squad had the medical. But he was the main man for the rescue squad. That's what the jury found, Your Honor, yes. He was the president of the rescue squad. But the rescue squad got the money. Rescue squad got the money. Now, and the rescue squad got the acquittal. But that's kind of tough. We have to look at it all. We have to look at this evidence in the light most favorable to the prosecution. Correct? That's the law. We have to look at the verdict, the fact that it's inconsistent. Doesn't help you a bit. Because juries are entitled to return inconsistent verdicts. They convicted your client and they acquitted the rescue squad. They can do that if they want. They could convict on count one and acquit on count two. And you might or I might not be able to discern the difference, but they're entitled to do that. That's what juries do, and they can do. Yes, Your Honor. However, as I read the Powell decision, Justice Rehnquist leaves the door open for district court judges to exercise their supervisory authority and overturn those verdicts because of the logical inconsistency and grant a new trial. The judge didn't do that. He didn't. But the way I read the denial of the motion for acquittal and new trial is that he did not believe he had the power to do so. And what I'm asking this court to do. So he really didn't exercise his discretion, since he didn't have the power to do it. I believe that to be true. Judge Jones knows the law pretty well. He knows it a lot better than I do. He's tried a lot of things. Yeah. He was out there in the beginning and thought he was about the best. Well, I do, and I'd love to try another case in front of him. But what happened to me last week, and I know this is outside of the record, but by way of argument is last week I tried a case in the Eastern District of Kentucky. And the judge in that district prepared the verdict form, and she said there is no way that, Mr. Corey, your client can be acquitted of the bankruptcy fraud charges and convicted of the money laundering charges. And so I'm going to tell the jury that if they acquit your client of the bankruptcy fraud charges, then they're not to consider the money laundering charges. That's what we're asking this court to do. Well, maybe that's in the Sixth Circuit. Maybe they've got different legal principles out there on this kind of stuff. I don't think so. I think that the law is against me. Supreme Court decision after Supreme Court decision has indicated exactly what Your Honor was talking about. The juries, no matter how undiscernible they can come to. The question on an inconsistent verdict claim is whether the verdict was And if they convict on this count and had evidence on which to convict, then we can affirm the fact that they acquitted on another count, which might be inconsistent. Maybe that was the error in that case. But should we use an error in another count to address the count that we have before us? Well, I don't think we can tell which one was the error and which one was not the error because nobody. We determine whether there's error in this one based on your arguments, and we look at it and decide whether there was error in this case. In my belief, there's absolutely no logical reason why my client, who is president of the Rescue Squad, was convicted, and the Rescue Squad was acquitted. Yeah, but the government can't appeal. They probably didn't like the fact that the Rescue Squad walked out. They didn't. They can't appeal because they've been acquitted. It's a double jeopardy. It was pretty hard on me, too. In the Constitution. The government doesn't get to come back up here and say, we want you to reinstate or want you to give us a new trial. They can't get a second shot. You can come up here and complain that you didn't have enough evidence, that the jury didn't have enough evidence to support you. We look at what happened to your client. That's the way I always understood that's why that legal principle was there. And I agree. You explained it a lot better than I did. The suggestion that I'm making to the court is that the district court judges should have the power to do exactly what that judge did in the Eastern District of Kentucky. And that is to look at the inconsistency of the verdict, knowing what the evidence is, and to say to themselves, there's absolutely no way a jury, if it does its duty and concentrates on the evidence, should be able to. What if the jury concluded that this conduct was beyond the scope of his employment? The jury could have then acquitted the corporation and convicted him. Couldn't they on that circumstance? Absolutely. And the point is that I don't think that we should be making decisions about these principles of law on what ifs, because what ifs are speculative. We don't know what the jury thought of. We just take the verdict and we decide whether your complaints or your challenges to the verdict are appropriate. And that's what you're doing. You're raising the issues that you think are appropriate. But with respect to their acquittal of the corporation, that's not before us. But I must say, if the government had to raise that, it probably might be a notion that he wasn't acting within the scope. Of course, that's a complex issue, as you know. But I think Judge Jones heard the testimony. He heard the evidence. I don't see how a jury could have concluded that my client was acting beyond the scope of his employment when, as it was pointed out by Judge King. Within the scope of the employment of a business to duplicate doctor certificates and change the dates and just keep using it would change dates. Was that what he was hired to do? I think that it was within the scope of his employment to deal with the certificates of medical necessity and to manage the billing of the company, which, as Justice King pointed out, he was the head man at the company. And if he's the head man at the company, which was argued by the government as to why he should be found guilty, he's obviously acting within the course and scope of his employment with respect to his duties at the rescue squad. It may be that the jury committed error in acquitting, but that may have been a reason that they did it. And you may be right. Of course, you don't want to argue that because you represent the corporation? No, no, no. I represented Mr. Lotha. And there has to be some limit. We read this on the cases time and time again that it's almost like, well, that's a jury. No, I think there should be a principle established. There should be limits on the power of a jury to reach decisions that make no common sense. It was argued very effectively by counsel for the rescue squad, don't throw the good out with the bad, don't throw the baby out with the bathwater. And that jury didn't want to convict the very company that's answering their 911 calls. And I think that's the only logical reason. Maybe that's right. Maybe you're right in that regard. But there's nothing the government can do about it. They tried to prosecute him and they lost. They can't appeal. Right. So we're all stuck with it. But the question is whether there was enough evidence against your man, as I always understood. And the question, and again, the question becomes whether Powell can be extended so that the district court judges can utilize their supervisory authority to prevent inconsistencies like this that are based upon. So the court should throw them both out. The court should grant my client a new trial, sir. Not overturn the conviction. You have some rebuttal. I see your time's up. All right. Thank you very much. Ms. Meyer. May it please the court, picking up on the issue of the inconsistent verdicts, the government would point out that there are any number of reasons why the jury may have acquitted the squad and convicted the appellant, Mr. Louthan. Maybe the jury didn't believe he was acting in the scope of his employment or that he wasn't acting in the benefit, for the benefit of the squad. Maybe he was working for the benefit, his own personal benefit or that of somebody else. And it's also possible. It doesn't matter. It does not matter. And the same with the money laundering and the being found guilty on the healthcare fraud. He was acquitted of the money laundering. He was. And the defendant, the appellant made the argument that that was an inconsistent verdict as well. We still had to prove all the elements of the money laundering. And perhaps the jury didn't think that we did do that properly, that we didn't trace the money sufficiently to the... The forfeiture part, the way that came out is what kind of at first didn't make total sense to me because the rescue squad got all the money, as I understand it, and he didn't get it. But then the restitution, the forfeiture was against him for what the rescue squad got. So they get the benefit of what he did and he still owes a million dollars to the government for what he stole. That's true. We tried to get the money from the squad even after they were acquitted on November 19th of 2011. We tried to do that, but we couldn't adequately, excuse me, we couldn't adequately trace the money to the assets held by the squad. They get to keep the fruits of the crime. Your Honor, he could, Mr. Louth and the appellant could take that up in an ancillary proceeding. The criminal forfeiture proceeding is not the proper place for him to take that up. I'm not, I think that looks to me like it's legitimate, but I'm just talking about the fact of the matter is the rescue squad gets money, got the money and gets to keep it. Your Honor, that can be taken up in another proceeding and Judge Jones decided that we were not allowed to take it from them in the criminal forfeiture proceeding. One reason probably is because they weren't a party to it anymore. They weren't a party to the criminal forfeiture proceeding. They walked out. They did. Despite our best efforts. And Your Honor, I, I think in terms of the sufficiency of the evidence, um, our verdict, the jury verdict has to be sustained if there's substantial evidence taking, uh, taking the view most favorable to the government to support it. And I think that the evidence was overwhelming, um, that, uh, that the defendant directed other people to put false statements on call sheets and that he submitted them to the billing company, um, uh, who, and then knowing that they would be sent to Medicare and Anthem for payment and that solve a rescue squad did receive that, uh, those amounts. Thank you. Do you have any further?  Your Honor. Okay. Thank you. Thank you. Um, I misspoke at the conclusion of the argument in response to the question, uh, from you, sir, whether the conviction should be overturned. And I said, the court should order a new trial. No, the court should send this case back to judge Jones to rehear the motion that set aside the verdict. And for judgment of acquittal with instructions that he has the power because of the inconsistencies of the verdict to order a new trial. That's the exact, the relief, uh, uh, that we're requesting. And I'll be asking judge Jones if the court agrees with me to order a new trial. Um, with respect to the forfeiture proceedings, um, uh, our ox was gourded at, uh, that proceeding as well. These forfeiture proceedings, I think need to have some rules. If this was a civil proceeding, the forfeiture proceeding, then we would have been able to bring an indemnity, uh, a cross complaint against the rescue squad. But you can, your, your client can still bring a civil action. He can't use it. He can't, but it wasn't once the rescue squad was acquitted, they weren't a party that, that, uh, they were acquitted of the criminal charges. But, uh, I believe they were still a party to the forfeiture case because the forfeiture was severed out a penalty. It's not a separate charge. Well, um, it, it left us bare, uh, in the forfeiture proceeding in a very unfortunate situation because my client, although he received a salary from rescue squad, never received a penny of that Medicare or Anthem money. And here he is having to forfeit property that he's worked all of his life for without ever receiving the money, uh, that was billed to Medicare and the rescue squad walks away. Um, uh, uh, he should have some, the same sort of rights, um, that he would in a civil proceeding to bring a cross claim for indemnity. Uh, if I was representing the rescue squad and, um, um, defending the civil proceeding, then I would be arguing that the findings regarding forfeiture against my client, uh, stopped him from bringing an indemnity claim because there's already been findings against him. The fact of the matter is, is that, um, well, my client was acquitted of the money laundering charges. He was, uh, uh, convicted of the subsequent, subsequent or the, uh, substantive healthcare fraud, uh, charges. The rescue squad was acquitted of everything. And there's only one reasonable explanation for that. The jury couldn't bring themselves to, uh, uh, do anything, but acquit that rescue squad because they're the people that are answering their 911 calls. That's extraordinarily prejudicial in my client, uh, because, uh, it, and it, and it leads us to the conclusion that it's okay for juries to have compromised verdicts, to have verdicts based upon emotion and sympathy. And I think the court should set out some rules. And the best way to handle that is to allow the district court judges the discretion to order new trials. Thank you, Mr. Thank you very much. Uh, we'll, uh, adjourn court for the day and come down and greet counsel. Dishonorable. Court stands adjourned until tomorrow morning at nine 30.
judges: Paul V. Niemeyer, Robert B. King, G. Steven Agee